UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
Lubbock Division

| | | |
|---|---|---|
| JESUS MONTIEL, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | Case No.: |
| v. | § | |
| | § | |
| | § | |
| MULESHOE INDEPENDENT SCHOOL DISTRICT; | § | |
| | § | |
| | § | |
| Defendant. | § | |
| | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Jesus Montiel, Plaintiff, and hereby files this Original Complaint against Muleshoe Independent School District, Defendant, and for cause of action would show this Court and Jury as follows:

## PARTIES

1. Plaintiff Jesus Montiel is an individual who, at the time of the assault and injuries claimed herein, was a minor student enrolled in Muleshoe High School in the Muleshoe Independent School District.

2. Defendant Muleshoe Independent School District ("MISD" or "the District") is an independent school district established under the laws of the State of Texas and operating in

Bailey County, Texas.  The District may be served with process by serving its

Superintendent, Dr. R. L. Richards, at 514 W Avenue G, Muleshoe, Texas 79347.

## JURISDICTION AND VENUE

3.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331,

which gives district courts original jurisdiction of all civil actions arising under the

Constitution, laws and treaties of the United States, 42 U.S.C. § 1983 and 1988.

4.   Venue in this Court is proper under 28 U.S.C. § 1391 (b) because the events giving rise to

this claim took place in this judicial district, and Defendant resides in this judicial district.

## TOLLING OF LIMITATIONS

5.  On April 1, 2020, the Supreme Court of Texas issued an emergency order in response to the

COVID pandemic stating: "Any deadline for the filing or service of any civil case is tolled

from March 13, 2020, until June 1, 2020, unless extended by the Chief Justice of the

Supreme Court. This does not include deadlines for perfecting appeal or for other appellate

proceedings, requests for relief from which should be directed to the court involved and

should be generously granted."  (Eighth Emergency Order Regarding the Covid-19 State of

Disaster).

6.  The Supreme Court of Texas then issued several additional and evolving emergency orders

that unambiguously extended certain enumerated filing deadlines for civil actions.  (*See*, *e.g.*,

Twelfth Emergency Order Regarding the Covid-19 State of Disaster, at para. 5 [renewing the

Eighth Emergency Order as clarified and amended to provide that "any deadline for the filing

or service of any civil case that falls on a day between March 13, 2020, and June 1, 2020, is

extended until July 15, 2020"]; Eighteenth Emergency Order Regarding the Covid-19 State

of Disaster; Twenty-First Emergency Order Regarding the Covid-19 State of Disaster;

Twenty-Sixth Emergency Order Regarding the Covid-19 State of Disaster ["Any deadline for the filing or service of any civil case that falls on a day between March 13, 2020, and September 1, 2020, is extended until September 15, 2020"].)  Thus, any deadline for the filing of a civil case, that was not otherwise extended by the Chief Justice, was tolled for 79 days – from March 13, 2020 through June 1, 2020.  Because the deadline for the filing of this action was not otherwise extended by the Chief Justice in any of the subsequent Emergency Orders Regarding Covid-19 State of Disaster, the tolling afforded by the Eighth Emergency Order applies.

## GENERAL ALLEGATIONS

### The Legal Framework

7.  At all relevant times, MISD received federal funding for its academic programs and activities and was subject to the requirements of Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681 ("Title IX").

8.  Title IX protects students from discrimination "on the basis of sex," which includes protection from sexual harassment and sexual abuse committed by school district employees.

9.  Texas Penal Code Section 21.12 provides that an employee of a public school district commits a second-degree felony if the employee "engages in sexual contact, sexual intercourse, or deviate sexual intercourse with a person who is enrolled in a public …school at which the employee works".

### The Factual Background

10.  Plaintiff lived with his family in Muleshoe, Texas and attended Watson Junior High School and Muleshoe High School.

11. Stephanie Lowery was employed by Muleshoe ISD as a coach and reading teacher at Watson

Junior High School.

12. Plaintiff first remembers Lowery as junior high school cross country coach and someone he would talk to about sports. When Plaintiff entered high school, Lowery's interest in him grew. The Watson Junior High School campus is adjacent to Muleshoe High School and Lowery habitually walked from the Junior High School Campus to visit Plaintiff during the school day.

13. Over the next few years, Lowery groomed Plaintiff, eventually luring him into a sexual relationship. Plaintiff was a member of the track team in high school, but in the spring semester of 2018 Plaintiff broke his collar bone and could only observe practices. Lowery would walk to the high school campus to speak more frequently to Plaintiff while he was sidelined, and Plaintiff felt they developed a friendship. Lowery cultivated Plaintiff's trust by encouraging Plaintiff to confide in her regarding school, family, friends and other personal issues. Lowery presented herself as a confidant and friend that Plaintiff could trust and talk to freely.

14. When Plaintiff's injuries healed and he returned to practicing with his team, Lowery continued to visit him at the high school, waiting until practices concluded so she could speak with him. Frequently after school, the two would go to the school's basketball courts and play basketball. Lowery also visited Plaintiff at lunch and the two would eat together in the high school cafeteria. Lowery's visits to the high school campus and her frequent interactions with Montiel were observed by other students, teachers, coaches and administrators.

15. During one of the basketball sessions Lowery asked Plaintiff if he was thirsty. When Plaintiff said yes, Lowery suggested they go to her house for water. Plaintiff agreed, but eventually

left the house because he felt awkward. This happened many more times. For a while,
Plaintiff would go back to Lowery's house and then excuse himself when he felt
uncomfortable.

16. In early 2018, during one of Montiel's visits to Lowery's house, Lowery kissed Plaintiff. The
two were sitting on Lowery's couch and Lowery made prolonged eye contact with Plaintiff
before leaning in to initiate the kiss. Plaintiff stood up and went to the bathroom to collect
himself, and then told Lowery he had to leave. Plaintiff and Lowery agreed that the kiss was
wrong and should not have happened, and that the two should not talk anymore. Plaintiff was
16 years old.

17. Plaintiff did not see Lowery for a week or two, but she soon returned to the high school
campus and approached him again. Lowery continued to initiate conversations and physical
encounters with Plaintiff. After each time, Lowery would say that the two could not talk
anymore but would then approach Plaintiff again as though nothing had happened.  Lowery
continued to invite Plaintiff to her house and, confused, Plaintiff accepted.

18. Later in the Spring of 2018, Lowery again initiated a kiss while Plaintiff was at her house.
Lowery got on top of Plaintiff and initiated vaginal intercourse. After years of grooming,
Plaintiff succumbed to Lowery's advances. Once it was over, Plaintiff left Lowery's house
immediately.

19. The school year ended shortly after the first time the two had sexual intercourse. Though
classes were over, Plaintiff and his friends visited the Muleshoe High School campus to play
football and basketball. Lowery began to show up at the campus when Plaintiff was there and
continued to initiate contact with him.

20. Plaintiff's flag football team scheduled a trip to Roswell, New Mexico for a sports

tournament in which a large number of students and teachers from Muleshoe High School and Watson Junior High School participated. Both Plaintiff and Lowery attended the tournament.

21. Plaintiff planned to travel with friends to Roswell. Plaintiff's mother dropped Plaintiff off at the friend's house, but Lowery texted Plaintiff before the group headed to Roswell and asked Plaintiff to ride with her so she would not have to drive alone. Plaintiff agreed, and Lowery picked Plaintiff up down the block from Plaintiff's friend's house. Once in Roswell, Lowery dropped Plaintiff off at his hotel to spend the night with his team.

22. The next day Plaintiff fell asleep early after his team got eliminated from the tournament. While Plaintiff was sleeping, Lowery texted Plaintiff to ask if he would sleep with her.

23. Plaintiff awoke the next morning, May 25, 2018, and texted Lowery to apologize for falling asleep early. Plaintiff promised Lowery he would watch Lowery's team play their game. Lowery picked Plaintiff up in her car and drove them to the fields. Plaintiff watched Lowery's team play, and when the game ended Plaintiff rejoined his teammates to watch their schoolmates compete.

24. A few hours later, Lowery texted Plaintiff to notify him that she was in her truck. Plaintiff met her, and Lowery suggested the two drive to Ruidoso, New Mexico to go hiking. Lowery drove Plaintiff to the team's hotel to pick up his belongings before driving to Ruidoso.

25. By the time Lowery and Plaintiff concluded their hike, it was dark. Lowery suggested that the two should stay in Ruidoso for the night. They went to Walmart and Lowery bought Dos Equis beer before they went to a hotel room she rented.

26. The hotel room had separate beds. At first, Plaintiff laid down in his own bed and the two drank beer. But when Plaintiff got up from the bed, Lowery got up and kissed him. Lowery

initiated sexual contact with Plaintiff in the hotel, and Plaintiff took a video recording.

27. Plaintiff felt awkward the next morning. Lowery and Plaintiff got breakfast and went straight back to Muleshoe, Texas. Lowery dropped Plaintiff off around the corner from his friend's house. After returning to Muleshoe, Plaintiff deleted the video recording of sexual intercourse.

28. A few weeks later, Lowery texted Plaintiff that she was in trouble for molesting Plaintiff and that they could not talk anymore. Plaintiff saw this as a way out and was grateful for the news. Lowery resigned from her position at MISD within a few weeks of this conversation. Despite Lowery's statement that she could no longer contact Plaintiff, she continued to text him that she was sorry and sent Plaintiff a handwritten letter, writing, "Hopefully, when all this is over, I can be there for you again" and, "Please tell me this was not all in my head and you truly care too."

29. In June of 2018, MISD Superintendent Dr. R. L. Richards called Plaintiff and Plaintiff's father in for a meeting to discuss Lowery. Dr. Richards told Plaintiff that the events at issue would be kept quiet, but Dr. Richards did not offer Plaintiff any resources, such as counseling, or acknowledge that Lowery's conduct affected Plaintiff.

30. Plaintiff returned to school in the Fall of 2018 to a hostile campus environment. Despite the Superintendent's promises, MISD staff knew of and harassed Plaintiff about Lowery's conduct. The harassment extended to Plaintiff's two younger sisters who were also students at Muleshoe High School. The two girls would tell Plaintiff that their teachers treated them differently and shamed them because of their relation to Plaintiff. In particular, one teacher pointed to a classroom plastic skeleton and told Plaintiff's sister that her "family's skeleton in the closet" was the Plaintiff.

31. Lowery pled guilty to sexual assault under § 22.011 of the Texas Penal Code and to sexual intercourse with a student while she was an employee under § 22.33 of the Texas Penal Code on August 7, 2019.

32. Media articles detailing Lowery's arrest circulated during Plaintiff's junior year of high school. Plaintiff attended a football practice and left early because his teammates all received notifications sharing the article.

33. Plaintiff's classmates exclusively interacted with him to ask about the rumors they had heard and articles they had read. Ultimately, Plaintiff isolated himself from his peers to avoid these conversations and the memories they provoked.

34. MISD failed to assist or aid Plaintiff and his family from the ongoing harassment brought about by Lowery's conduct. Plaintiff spent his last two years of high school feeling angry and alone.

**MISD Employee's History Of Inappropriate Sexual Conduct**

35. Based on information and belief, prior to Lowery's sexual assaults of Plaintiff, MISD had a history of inappropriate sexual relationships between employees and students.

36. Based on information and belief, in approximately 2015, a female Muleshoe High School student was sexually abused by her Muleshoe High School basketball coach. Following multiple incidents of sexual abuse, the basketball coach was asked to resign, and no further actions were taken by MISD.

37. Based on information and belief, in or around 2013-2014, a female Muleshoe High School teacher was caught engaging in intercourse with a male student in the teacher's classroom.

38. Based on information and belief, MISD employees knew about Lowery's inappropriate sexual relationship with Plaintiff. Lowery frequently spent an unusual amount of time with

Plaintiff while on campus, and after Lowery resigned, she called Plaintiff and told him that

other teachers knew about their sexual relationship.

### Violations of Law and Policy

39. Defendant MISD's actions and inactions related to educator sexual misconduct, Plaintiff's

    sexual assault and subsequent harassment and retaliation violated several of its own policies

    and Texas law.

40. Defendant MISD's actions and inactions related to educator sexual misconduct, Plaintiff's

    sexual assault and subsequent harassment and retaliation violated the guidelines promulgated

    by the United States Department of Education and the Texas Education Agency.

41. Based on information and belief, Defendant failed to properly train and educate its

    employees, including school administrators, faculty, and staff in the prevention of and

    appropriate response to allegations of sexual harassment, sexual abuse, and retaliatory

    conduct, as well as the implementation of mandated Title IX policies and procedures.

42.  Based on information and belief, Defendant failed to educate MISD students, including

    Plaintiff, on the dangers of inappropriate educator-student relationships, sexual harassment,

    and sexual assault.

43. Defendant, through its administrators, acted with deliberate indifference toward educator

    sexual misconduct as reflected by Defendants' actions and inaction alleged herein.

44. As a result of Defendant's actions and inaction related to educator sexual misconduct,

    Plaintiff was deprived of educational opportunities and/or benefits.

### COUNT ONE
### DISCRIMINATION ON THE BASIS OF GENDER
### IN VIOLATION OF 20 U.S.C. § 1681 (TITLE IX) – POST ASSAULT

45. Plaintiff incorporates all paragraphs of this Complaint as if fully set forth herein.

46. MISD's acts and failures to act perpetrated against Plaintiff amounted to unlawful sexual harassment and discrimination on the basis of gender. The harassment and discrimination was sufficiently severe and pervasive as to create an abusive and sexually hostile educational environment for Plaintiff. One of more MISD administrators or officials, with authority to take corrective action on Plaintiff's behalf, had actual notice of the sexual assault, harassment, and discrimination in violation of their own policies. Those failures amounted to deliberate indifference toward the unlawful sexual conduct that had occurred, was occurring, or was likely to occur. The District's action –and inaction – was clearly unreasonable. As a result, Plaintiff was subject to a loss of educational opportunities and benefits.

47. Upon information and belief, MISD, through its administrators, had actual knowledge that Lowery was engaged in an inappropriate relationship with Plaintiff prior to the sexual abuse that occurred in 2018.

48. MISD's acts and failures to act in response to such knowledge amounted to deliberate indifference. By acting clearly unreasonably in response to Lowery's predatory acts, MISD created and exacerbated a sexually hostile environment for Plaintiff on campus, thereby discriminating against him on the basis of gender.

**COUNT TWO**
**DISCRIMINATION ON THE BASIS OF GENDER**
**IN VIOLATION OF 20 U.S.C. § 1681 (TITLE IX) – PRE ASSAULT**

49. Plaintiff incorporates all paragraphs of this Complaint is if fully set forth herein.

50. MISD maintained a policy of indifference to sexual misconduct between MISD employees and MISD students.

51. MISD's policy of indifference created a heightened risk of sexual harassment on campus that was known and/or obvious to MISD.

52. MISD knowingly and deliberately failed to adhere to the guidelines and recommendations promulgated by the Department of Education both its 2001 Guidance and 2011 Dear Colleague Letter.

53. MISD's policy of indifference to sexual misconduct of MISD students committed by MISD employees created a heightened risk for sexual misconduct to occur which was a substantial factor in causing the sexual assaults alleged by Plaintiffs herein.

54. But for MISD's policy of deliberate indifference to sexual misconduct of MISD students committed by MISD employees, Plaintiff would not have been sexually abused by Lowery.

55. It was foreseeable to MISD that if it acted with deliberate indifference to sexual misconduct committed by its employees, it would create a heightened risk for Lowery ultimately to sexually abuse Plaintiff.

56. In addition to its general policy of indifference to sexual misconduct, MISD acted with deliberate indifference to its knowledge that Lowery was a sexual predator prior to Lowery sexually abusing Plaintiff.

57. MISD's failure to respond reasonably to its knowledge that Lowery was a sexual predator prior, and during Lowery's sexual abuse of Plaintiff caused Plaintiff's sexual abuse by Lowery.

58. As a result of the above-described conduct, Plaintiff has suffered, and continues to suffer, great pain of mind and body, physical injury, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; was prevented and will continue to be prevented from performing his daily activities and obtaining the full enjoyment of life; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

## COUNT THREE
## 42. U.S.C. § 1983 – EQUAL PROTECITON

59.     Plaintiff incorporates all paragraphs of this Complaint is if fully set forth herein.

60.     By its conduct, acting under color of state law through its administrators MISD is liable

under 42 U.S.C. § 1983 for violating Plaintiff's rights under the Equal Protection Clause of the

Fourteenth Amendment of the United States Constitution.

61.     At all relevant times, MISD, acting through its administrators developed, implemented,

enforced, encouraged and sanctioned de facto policies, practices, and/or customs exhibiting

deliberate indifference to Plaintiff constitutional rights under the Equal Protection Clause of the

Fourteenth Amendment to the United States Constitution

62.     MISD had a custom, policy and practice of failing to properly record, process, and

investigate reports of educator sexual misconduct perpetrated against male students.

63.     MISD's unlawful actions were committed willfully, knowingly and with specific intent to

deprive Plaintiff of his constitutional rights under the Equal Protection Clause of the Fourteenth

Amendment to the United States Constitution.

64.     MISD's actions and inactions demonstrated a continuing, widespread and persistent pattern

of constitutional misconduct that constituted an unofficial policy, custom or practice.

## COUNT FOUR
## 42. U.S.C. § 1983 - SUBSTANTIVE DUE PROCESS

65.     Plaintiff incorporates all paragraphs of this Complaint is if fully set forth herein.

66.     By its conduct, acting under color of state law MISD is liable under 42 U.S.C. § 1983 for

violating Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment of the

United States Constitution.

67.     At all relevant times, MISD, acting through its administrators developed, implemented,

enforced, encouraged and sanctioned de facto policies, practices, and/or customs exhibiting deliberate indifference to Plaintiff's constitutional rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

68.     MISD's failure to properly investigate and take action on reports of educator sexual misconduct emboldened and empowered employees, including Lowery, to engage in inappropriate relationships with students and made students, including Plaintiff, vulnerable to sexual abuse.

69.     MISD's unlawful policies, practices and/or customs included the failure to properly hire and train staff charged with handling reports of sexual harassment, sexual abuse and educator misconduct.

70.     MISD's unlawful policies, practices and/or customs included the failure to educate MISD students, including but not limited to Plaintiff, on the dangers and consequences of inappropriate educator student relationships, educator sexual misconduct, sexual harassment, assault and retaliatory conduct.

71.     Although MISD had a "paper policy" apparently designed to comply with state and federal law, the District's actual informal customs, practices and policies reflect intentional discrimination against male students based on gender and gender stereotypes.

72.     As a result of MISD's deliberate indifference and violation of Plaintiff's constitutional right to Due Process, Plaintiff is entitled to compensatory damages for emotional pain, suffering, mental anguish and other non-pecuniary losses.

## JURY DEMAND

73.     Plaintiff demands a jury trial on all issues so triable.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for damages; punitive damages; costs; interest; attorney's fees; statutory/civil penalties according to law; and such other relief as the court deems appropriate and just.

Dated:  December 30, 2021                    Respectfully submitted,

> */s/ Alexander S. Zalkin*
> Alexander S. Zalkin (#24124332)
> alex@zalkin.com
>
> THE ZALKIN LAW FIRM, P.C.
> 10590 W Ocean Air Drive Suite 125
> San Diego CA  92130
> Telephone: (858) 259-3011
> Facsimile: (858) 259-3015
>
> *Attorneys for Plaintiffs*